UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

GORDON A. LENZ and JAY EDMOND RUSS,

     Plaintiffs,

              **Case No.:  CV 08 3795 (TCP)**

   -against-


AARON YOUNG and SAINT ANNES
DEVELOPMENT COMPANY, LLC,

     Defendants.

------------------------------------------------------------------X

**MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF FACTS ........................................................... 1

MATERIAL FACTS NOT IN GENUINE DISPUTE ..................................................... 10

LEGAL STANDARDS ................................................................................................. 10

ARGUMENT................................................................................................................. 10

POINT I: The statements attributed to Young and Novikoff are not defamatory statements of fact.......................................................................................................... 10

POINT II:  Novikoff's *argument* that the terms of the Bethpage deal were concealed is substantially true. .................................................................................... 15

POINT III:  Plaintiffs cannot prove that Young's and Novikoff's statements were made with the requisite degree of fault for a matter of public concern.................................. 16

POINT IV:  Young's and Novikoff's Statements Are Protected Under NY Statutory Privilege. ...................................................................................................................... 17

A.    Young's *Daily Record* Quote Qualifies for § 74 Statutory Protection............... 20

B.    Novikoff's *Newsday* Quote Qualifies for § 74 Statutory Protection .................. 22

CONCLUSION ............................................................................................................. 23

# **TABLE OF AUTHORITIES**

**Cases**

600 W. 115th St. Corp. v. Von Gutfeld,  603 N.E.2d 930 (N.Y.,1992),
   cert denied 508 U.S. 910 (1993) ............................................................................ 12, 14

Bloom v. Fox News, 528 F. Supp. 2d 69 (E.D.N.Y. 2007)................................................ 14

Boulos, M.D. v. Newman, M.D., 754 N.Y.S.2d 510 (4th Dep't 2003) ............................. 15

Branca v. Mayesh, 476 N.Y.S.2d 187 (2d Dep't 1984) .............................................. 21, 22

Brian v. Richardson, 87 N.Y.2d 46 (N.Y. 1995)............................................................... 11

Chapadeau v. Utica Observer-Dispatch, 341 N.E.2d 569 (N.Y. 1975)...................... 16, 17

Cohen v. Google, Inc., 887 N.Y.S.2d 424 (N.Y. Sup. Ct. 2009) ..................................... 10

Corporate Training Unlimited, Inc. v. Nat'l Broad. Co., Inc.,
   981 F. Supp. 112 (E.D.N.Y. 1997)..................................................................................... 14

Cotrell v. Berkshire Hathaway, Inc., 809 N.Y.S.2d 714 (4th Dep't 2006)....................... 19

Dillon v. City of New York, 704 N.Y.S.2d 1 (1st Dep't 1999) ........................... 10, 13, 17

DRT Const. Co., Inc. v. Lenkei, 576 N.Y.S.2d 724 (4th Dep't 1991)....................... 11, 15

Edmiston v. Time, Inc., 257 F. Supp. 22 (S.D.N.Y. 1966) ............................................... 20

Fleiss v. Wiswell, 157 F. App'x. 417 (2d Cir. 2005) ........................................................ 11

Foley v. CBS Broadcasting Inc., No. 169463/05
   (Sup. Ct. N.Y. Co. Sept. 13, 2006)....................................................................... 11, 20

Ford v. Levinson, 454 N.Y.S.2d 846 (1st Dep't 1982) ............................................... 19, 22

Golub v. Enquirer/Star Group, Inc., 681 N.E.2d 1282 (N.Y. 1997) ................................ 10

Gurda v. Orange County Pub. Div. of Ottaway Newspapers,
   436 N.E.2d 1326 (N.Y. 1982).................................................................................... 21

Hogan v Herald Co., 446 N.Y.S.2d 836 (4th Dep't 1982).............................................. 18

Holy Spirit Ass'n for Unification of World Christianity v. New York Times Co.,
   399 N.E.2d 1185 (N.Y. 1979)............................................................... 18, 20, 21, 23

Immuno AG. v. Moor-Jankowski, 77 N.Y.2d 235 (N.Y. 1995) ...........................11, 13, 14

Jackson v. Quinn, 593 N.Y.S.2d 484 (4th Dep't 1992) ...................................................... 12

Julian v. American Business Consultants, 137 N.E.2d 1 (1956)....................................... 13

Kraushaar v. LaVin, 39 N.Y.S.2d 880 (Sup. Ct. Queens County 1943).................... 18 n. 3

Lacher v. Engel, 817 N.Y.S.2d 37 (1st Dep't 2006)......................................... 14, 18, 19, 23

Leder v. Feldman, 569 N.Y.S.2d 702 (1st Dep't 1991) .....................................................20

Levin v. McPhee, 119 F.3d 189 (2d Cir. 1997)................................................................. 14

Liberman v. Gelstein, 605 N.E.2d 344 (N.Y. 1992) ......................................................... 17

Mancini v. Marine Midland Bank, 586 N.Y.S.2d 61 (4th Dep't 1992),
   appeal denied, 80 N.Y.2d 760, 605 N.E.2d 874, 591 N.Y.S.2d 138 (1992)........... 18 n. 3

Martin v. Beigel, 15 Media L. Rep. 2261 (Sup. Ct. Columbia Cty. 1988) .......................22

McGill v. Parker, 582 N.Y.S.2d 91 (1st Dep't 1992)...................................................11, 15

McNally v. Yarnall, 764 F. Supp. 853 (S.D.N.Y. 1991)..............................................22, 23

Mencher v. Chesley, 75 N.E.2d 257 (N.Y. 1947) ............................................................. 10

Park v. Capital Cities Commc'ns, Inc., 585 N.Y.S.2d 902 (4th Dep't. 1992) ...................15

People ex rel. Bensky v. Warden, 179 N.E. 257 (N.Y. 1932)........................................... 18

Proskin v. Hearst Corp., 787 N.Y.S.2d 506 (3d Dep't 2005) .......................................... 16

Seltzer v Fields, 244 N.Y.S.2d 792 (1963), aff'd, 14 N.Y.2d 624 (1964) ........................ 19

Silver v. Kuehbeck, No. 05 Civ. 35 (RPP), 2005 WL 2990642 at *16
   (S.D.N.Y. Nov. 7, 2005) ...............................................................................................20

Simon v. Potts, 225 N.Y.S.2d 690 (Sup. Ct. Albany County 1962) ..........................18 n. 3

The Savage Is Loose Co. v. United Artists Theatre Circuit, Inc.,
   413 F. Supp. 555 (S.D.N.Y. 1976)............................................................................18 n. 3

Weiner v. Doubleday & Co., 74 N.Y.2d 586 (N.Y. 1989)............................................... 11

Wiener v. Weintraub, 239 N.E.2d 540 (N.Y. 1968)....................................................18 n. 3

<u>Willson v. Ass'n of Graduates of the United States Military Acad.</u>,
  946 F. Supp. 294 (S.D.N.Y. 1996)................................................................................22

<u>Youmans v. Smith</u>, 47 N.E. 265 (N.Y. 1897) ..................................................... 18 n. 3, 19

<u>Zaidi v. United Bank Ltd.</u>, 747 N.Y.S.2d 268 (Sup. Ct. New York County 2002) .......... 17

<u>Zerman v. Sullivan & Cromwell</u>, 677 F. Supp. 1316 (S.D.N.Y. 1988) ........................... 20

<u>Zirn v. Cullom</u>, 63 N.Y.S.2d 439 (Sup. Ct. New York County 1946)....................... 18 n. 3

**Treatises**

Restatement (Second) of Torts § 558 ................................................................................ 17

**Statutes**

N.Y. Civ. Rights § 74 (2009) ...................................................................................passim

Defendants Saint Annes Development Company, LLC and Aaron Young, by and through counsel, hereby submit the following memorandum in support of their motion for summary judgment.

## INTRODUCTION AND SUMMARY OF FACTS

Plaintiffs Gordon Lenz and Jay Russ have sued Saint Annes Development Company, LLC ("SADC") and one of its owners, Maryland businessman Aaron Young ("Young"), for defamation. The allegedly defamatory statements attributed to defendants were published in Newsday, a New York newspaper, and the Baltimore, Maryland newspaper called The Daily Record.

The articles at issue involved the business dealings of New York businessman, Neal Trabich ("Trabich"). Trabich was the owner of Global Golf, which operated the concessions at various public golf courses, including the world-famous Bethpage State Park which hosted the United States Golf Association U. S. Open Championships in 2002 and 2008. Defendants' Local Rule 56.1 Statement of Undisputed Facts ("Def. Stmnt. Facts") ¶¶ 5-6. The right to operate the Bethpage concession, as well as others operated by Global Golf, is granted by the State of New York under a license agreement. Id. ¶ 6.

Trabich met Young in or around 2000. Id. ¶ 6. Their first business deal took place in 2000 when an entity formed by Young (and his partner Peter Rubin), called AP Links, loaned Global Golf $600,000, and also entered into a Consulting Agreement with Global Golf. Id. ¶¶ 7-11.

Trabich did another deal with Young in 2006. Id. ¶ 13. On May 2, 2006, Trabich and his wife, Terry Trabich, entered into an agreement with SADC (sometimes referred

to as the "Facility Agreement") – also owned by Young and Rubin – pursuant to which SADC arranged a line of credit for the Trabiches to use in the construction of a golf course and clubhouse in Middletown, Delaware.   Id. ¶¶ 13-16; Exh. 6 (Facility Agreement).[1]   The Trabiches granted SADC a mortgage on a home owned in Mrs. Trabich's name in Laurel Hollow, New York (the "Laurel Hollow property") to secure their obligations under the Facility Agreement.  In return for SADC's agreement not to record the mortgage, the Trabiches agreed that they would not place or allow to be placed on the Laurel Hollow property any further liens or encumbrances ahead of SADC's mortgage. Id. ¶¶ 16-19; Exh. 7 (Mortgage).  The Trabiches drew down the full $1 Million immediately after the credit line was established.  Id. ¶ 20.

In or about October 2006, Trabich retained his friend, New York attorney Jay Russ.  Id. ¶¶ 21-23.  On November 3, 2006, Russ filed a lawsuit on the Trabiches' behalf against AP Links, SADC, Young, Rubin, and others, alleging that the Consulting Agreement with AP Links and the May 2, 2006 Facility Agreement were usurious, lacking in consideration, unenforceable, and void.   Id. ¶ 30; Exh. 13 (Verified Complaint).  Russ filed the lawsuit in the Supreme Court of the State of New York, County of Nassau.  Id.  Russ did not have Young served or notified of the lawsuit until late February 2007. Id. ¶ 32.

After Young learned of the lawsuit, substantial litigation ensued.  The Trabiches' claims regarding the May 2, 2006 Facility Agreement were dismissed by the court based on the forum selection clause in the Facility Agreement which required all litigation

---

[1]      All exhibits referenced herein are annexed to the Declaration of Steven B. Gould.

concerning the agreement to be in Maryland.  Id. ¶ 49; Exh. 21 (Order).  The Trabiches later discontinued the lawsuit with respect to the claims that remained.  Id. ¶ 56; Exh. 25 (Order).

On April 4, 2007, SADC filed a lawsuit against the Trabiches in the United States District Court for the District of Maryland alleging, inter alia, breach of the May 2, 2006 Facility Agreement.  Id. ¶ 48.

SADC and AP Links each filed separate lawsuits against New York businessman Gordon Lenz ("Lenz") based on information they learned after being notified of the lawsuit filed by the Trabiches in New York.  Id. ¶¶ 55, 57, 59, 78.

SADC learned in discovery that Lenz and the Trabiches were both represented by Jay Russ.  Id. ¶ 28, 44.  SADC alleged in its various public filings that, in late 2006, the Trabiches, Russ, and Lenz orchestrated a scheme designed to extricate the Trabiches from their obligations to SADC, and to put the Trabiches' assets out of SADC's reach.[2] Id. ¶¶ 67-69, 77-79, 85-87; Exhs. 32-33, 36-37, 40.  SADC alleged that the scheme to deprive SADC of its contractual rights involved the dissipation and transfer of Trabiches' assets.  SADC and Young alleged that the scheme designed by Trabich, Russ and Lenz involved taking the Bethpage concession out of Global Golf's hands and putting it into Lenz's hands.  Id.  Toward that end, Russ formed or supervised the formation of Confer Bethpage, owned solely by Lenz.  Id. ¶ 26.  Confer Bethpage was then awarded the Bethpage Contract by the State of New York.  Id. ¶ 29, 33-36.  Confer Bethpage bought

---

[2]    Many of the factual bases upon which the allegations were made are set forth in the Rule 56.1 Statement filed in support of this motion.

Global Golf's assets related to the Bethpage concession.  Id. ¶ 37.  Trabich became a salaried employee of Confer Bethpage.  Id. ¶39.  At the same time, Lenz made a $500,000 loan to the Trabiches that was secured by a mortgage on the Laurel Hollow property.  Id. ¶ 42.  The Bethpage transaction and loan were both finalized on the same day, December 21, 2006.  Id. ¶ 36-37, 42.

Lenz recorded his $500,000 mortgage against the Trabiches' Laurel Hollow property on or about January 5, 2007 (see Exh. 28 at 4, and affidavit and exhibits referenced therein), ahead of SADC's mortgage and, indeed, a month and a half before SADC was even served with the Trabiches' New York state court lawsuit attempting to invalidate the Facility Agreement.  Young, therefore, had no opportunity to protect SADC's interest by recording the mortgage it received pursuant to the Facility Agreement.  Lenz's recordation of his mortgage put the Trabiches in breach of the Facility Agreement.  Id. ¶ 43.  Subsequently, the Trabiches ceased making payments due under the Facility Agreement, including interest payments directly to the bank and fees due to SADC, prompting the United States District Court for the District of Maryland (Quarles, J.) to grant SADC's motion for partial summary judgment.  Id. ¶51-52, 60-61; Exhs. 23, 28 (Memorandum Opinion) at 3-4.

The allegations of the above-described scheme among Trabich, Lenz, and Russ were asserted in:  (1) SADC's First Amended Complaint against Gordon Lenz filed on August 13, 2008 in the United States District Court for the Eastern District of New York (Id. ¶77-78; Exh. 36); (2) Plaintiffs' Motion to Direct Entry of Final Judgment on Summary Judgment Ruling (Id. ¶ 67-69; Exh. 32, 33); and (3)  Plaintiffs' Motion to

4

Overrule Objections at Deposition and to Compel Defendant Neal Trabich to Answer Questions (Id. ¶¶ 85-87; Exh. 40). All of these filings are readily accessible to the public.

On December 11, 2007, Newsday published an article reporting that Trabich was charged with felony counts of forging false instruments in connection with the renovation of the Bergen Point Golf Course in West Babylon. Id. ¶ 50; Exh. 22 (article).

On August 12, 2008, Newsday ran three articles regarding Neal Trabich's criminal charges, including a newly-reported allegation that he bribed public official Allan Binder. Id. ¶ 70; Exh. 34 (Aug. 12 articles).

One of the August 12, 2008 articles reported that "just weeks after" the criminal charges against Trabich were filed, Global Golf transferred the Rockland Lakes State Parks contract to Confer Management Inc. Id. ¶ 73; Exh. 34. The article noted that Trabich transferred Global Golf's contract at Bethpage to Confer in 2006. Id. Defendants were neither quoted nor mentioned in that article.

On August 13, 2008, Newsday ran an article reporting that Trabich pled guilty to various felonies: "Trabich admitted paying bribes, forging financial documents, and inflating expense vouchers in connection with his company's operation of the Northport Veterans Administration golf course and the county's Bergen Point Golf Course in West Babylon." Id. ¶¶ 75-76; Exh. 35 (article).

The coverage of Trabich's business dealings continued on August 14, 2008 when Newsday ran an article entitled "A deal to sidestep debtors?". Id. ¶ 82; Exh. 39 (article). This article opens with: "A pair of federal lawsuits accuses Global Golf owner Neal Trabich of conspiring with a top Long Island insurance executive to transfer the lucrative

5

contract for the Bethpage State Park golf concessions so Trabich could avoid paying his rising debts." Id. The article goes on to discuss the lawsuits filed by SADC and AP Links against Lenz, and describes the allegations in the lawsuits that Trabich, Russ, and Lenz conspired to move assets out of SADC's reach. Id. The article states that Lenz and his attorneys did not return calls seeking comment. The article reports SADC's contention that the terms of the Bethpage assignment were concealed from the State of New York; but it also reports, based on a comment attributed to State Parks spokesperson Eileen Larrabee, that "The arrangements between Lenz and Trabich weren't disclosed to the state, which wouldn't concern itself with them." Id.

SADC's and AP Links' attorney, Kenneth Novikoff, was quoted in the August 14 article:

> But Uniondale attorney Ken Novikoff, who represents AP Links and St. Anne's Development, argued the deal was "concealed" from the state. "We are confident that when we get discovery . . . we'll get the true picture of what the relationship was between Mr. Lenz and Mr. Trabich."

Exh. 39. Plaintiffs allege defamation based on this attribution.

Meanwhile, in SADC's lawsuit against the Trabiches in the United States District Court for the District of Maryland, the parties made a flurry of filings right around the time of Trabich's guilty plea. Id. ¶ 67-69, 77-81, 85-93; Exhs. 32, 36-38, 40-44.

On August 8, 2008, SADC moved for entry of final judgment under Rule 54(b) on the summary judgment it obtained. Id. ¶ 67; Exh. 32-33. SADC set forth, inter alia, its allegations of the scheme among Trabich, Russ, and Lenz:

- "At his recent deposition, Trabich was asked about the discussions he had with Lenz concerning both the $500,000 loan and the consideration

6

Global received in return for the Bethpage Contract going to Confer Bethpage. On both issues, Trabich refused to answer on attorney-client privilege grounds. Exh. 6 (Trabich Tr. at 269, 296-97). Trabich invoked the privilege even though both he and Lenz were represented in those transactions by the same attorney, Jay Russ. (Trabich Tr. at 274, 299) It is no wonder that Trabich and Lenz tried to shield their discussions through the ruse of being represented by the same attorney—New York law forbids the assignment of such contracts without the State's permission, *see* N.Y. GEN. MUN. LAW § 109 (McKinney 2007), and the assignment agreement obtained through the FOIA request sets forth no consideration for the actual assignment." [Footnote omitted]

- "Thus, Trabich and Lenz, with the assistance of their mutual attorney, Russ, orchestrated a transaction whereby two prime assets belonging to the Trabiches—their residence and the Bethpage Contract—were attempted to be put out of the reach of SADC and Trabich's other creditors, while at the same time enabling Trabich to draw an annual salary of $350,000 from Lenz's new company."

Def. Stmnt. Facts ¶ 69; Exhs. 32-33.

On August 13, 2008, SADC supplemented its Rule 54(b) motion to advise the Court of Trabich's guilty plea, and to ask the Court to expedite its ruling because it appeared that Trabich would soon be incarcerated. Id. ¶ 79-81; Exh. 37-38.

On August 17, 2008, SADC filed a motion to compel to challenge Trabich's numerous refusals to answer deposition questions. Id. ¶ 85; Exh. 40. There, SADC again laid out in detail its allegations of the scheme among Trabich, Russ, and Lenz.

These filings, as well as others, caught the attention of a reporter for The Daily Record named Brendan Kearney. Id. ¶ 94; Exh. 45. Mr. Kearney was already familiar with the various cases, having originally reported on SADC's summary judgment victory back in May 2008. Id. ¶¶ 62-65; Exh. 30.

7

On August 21, 2008, The Daily Record ran an article by Mr. Kearney that detailed the various filings that had recently been made by both parties, and specifically discussed SADC's and Young's attempt to speed up the litigation in light of what appeared to be Trabich's impending incarceration. Exh. 45. The article contained quotes from various filings in the lawsuit. Exh. 45.

The August 21 Daily Record article included comments attributable to Young upon which both Lenz and Russ have sued for defamation. The statements attributable to Young are within the last two paragraphs of the following passage:

> When Long Island golf course operator and aspiring developer Neal Trabich pleaded guilty last week to, among other charges, bribing a Suffolk County legislator, Baltimore art dealer and investor Aaron Young took notice.
>
> That's because Young is the plaintiff in three separate federal lawsuits against Trabich and his associates concerning golf course consulting and development deals in three states that went bad.
>
> In one of those cases – concerning the fallout from a plan to build a golf course in Middletown, Del., with pro golfer Jim Furyk – U.S. District Court for the District of Maryland in Baltimore Judge William D. Quarles Jr. ruled in favor of Young and his business partner Peter M. Rubin in May to the tune of nearly $3 million.
>
> Quarles' grant of partial summary judgment on the contract claims in that case has not been entered as a final judgment, and there are outstanding fraud claims. Young's lawyer is now pressing to speed the discovery process in the case so it is completed before Trabich, 56, begins his estimated two- to six-year prison term.
>
> "Since we learned last week that Mr. Trabich has pled guilty to various felony charges and will likely be sentenced to prison sometime in October, matters such as these have taken on an unanticipated urgency," Steven B. Gould wrote in a letter to Quarles Wednesday.

8

Gould, of Brown & Gould LLP in Bethesda, is out of the country this week on vacation and wrote the letter from his hotel room. He could not be reached for comment.

Young, 50, said Trabich "is just the first domino to fall." He said actions against the other members of what he calls "the triumvirate" – Trabich's lawyer Jay Russ and business partner Gordon Lenz, both in New York – will come in the next few months.

"We are vigorously pursuing Gordon Lenz and we will soon commence vigorously pursuing Jay Russ," said Young, who has alleged the men conspired to put Trabich's assets out of Young's reach. "I think you're going to see a lot more litigation and I think the nefarious nature of this scheme will continue to unravel."

Exh. 30.

Plaintiffs allege that the statements attributable to Novikoff in the August 14, 2008 Newsday article, and the statements attributable to Young in the August 2, 2008 Daily Record article, were defamatory. Plaintiffs have sued SADC and Young for $5,000,000.00 in compensatory damages.

For purposes of this motion only, SADC and Young will assume that the statements attributed to Novikoff were authorized and accurately reported. Defendants will likewise assume, for purposes of this motion, that the statements attributed to Young were accurately reported.

Defendants move for summary judgment because the statements attributed to them are not, as a matter of law, defamatory. The statements at issue are expressions of opinion and argument, and not capable of being proven true or false. Moreover, the statements are privileged under New York statutory law.

## MATERIAL FACTS NOT IN GENUINE DISPUTE

SADC and Young incorporate by reference Defendants' Local Rule 56.1 Statement, filed herewith.

## LEGAL STANDARDS

Defendants will not repeat the standards governing motions for summary judgment, as the Court is obviously well aware of the same. The Court should be aware that the parties stipulated in their Joint Pretrial Statement that New York substantive law applies to this action. See Document No. 80, p. 2.

## ARGUMENT

**POINT I: The statements attributed to Young and Novikoff are not defamatory statements of fact.**

Under New York law:

> The elements of a cause of action for defamation "are a false statement, published without privilege or authorization to a third-party, constituting fault as judged by, at a minimum, a negligence standard, and, it must either cause special harm or constitute defamation per se."

Cohen v. Google, Inc., 887 N.Y.S.2d 424, 427-28 (N.Y. Sup. Ct. 2009) (citing Dillon v. City of New York, 704 N.Y.S.2d 1, 5 (1st Dep't 1999).

To be defamatory, the statement must be one which "tends to expose a person to hatred, contempt or aversion, or to induce an evil or unsavory opinion of him in the minds of a substantial number of the community." Golub v. Enquirer/Star Group, Inc., 681 N.E.2d 1282, 1283 (N.Y. 1997) (citing Mencher v. Chesley, 75 N.E.2d 257, 259 (N.Y. 1947)).

10

In order to constitute a statement of fact, as opposed to mere opinion, the statement must be provably false. McGill v. Parker, 582 N.Y.S.2d 91, 98-99 (1st Dep't 1992); DRT Const. Co., Inc. v. Lenkei, 576 N.Y.S.2d 724, 725 (4th Dep't 1991). In deciding whether a statement is an opinion, the court must consider the context in which the statements were made, the entirety of the statement, and the tone. Immuno AG. v. Moor-Jankowski, 77 N.Y.2d 235, 254 (N.Y. 1995); see Brian v. Richardson, 87 N.Y.2d 46, 51 (N.Y. 1995) (Courts must take into account the "larger context in which statements [are] published, including the nature of the particular forum"). The content, tone and apparent purpose of a statement typically signal to the reader that the statement reflects the author's opinion. See Fleiss v. Wiswell, 157 F. App'x. 417, 417-18 (2d Cir. 2005) (statement in Amazon.com book review that defendant's book was based on "lies and diatribe" constituted protected opinion); Foley v. CBS Broadcasting Inc., No. 169463/05 (Sup. Ct. N.Y. Co. Sept. 13, 2006) (statements in a broadcast calling local businesswoman "con artist" who ran "crooked business" and engaged in "scam" and "ripped off" customers constituted protected opinion). Courts are admonished not to strain to find defamatory innuendo. Weiner v. Doubleday & Co., 74 N.Y.2d 586, 592 (N.Y. 1989).

Novikoff's statements were not defamatory statements of fact. The article, in the paragraphs leading up to Novikoff's statements, described the various allegations made in the AP Links and SADC v. Lenz lawsuits. After recounting the various allegations, the article reported that SADC's attorney, Kenneth Novikof, "argued" that the terms of the Bethpage deal were "concealed." The use of the word "argued" to characterize

11

Novikoff's words unambiguously tells the reader that Novikoff is an attorney advocating a position of his clients, not stating a fact capable of being proven true or false. 600 W. 115th St. Corp. v. Von Gutfeld,  603 N.E.2d 930, 938 (N.Y.,1992) ("statement of opinion and advocacy" held to be not defamatory), cert denied 508 U.S. 910 (1993).

Novikoff is then quoted as saying that the discovery process will yield "the true picture of what the relationship was between Mr. Lenz and Mr. Trabich."  These too are the words of an advocate, as any reasonable reader would readily understand.  Moreover, these words do not hold Russ or Lenz up to scorn, hatred, or contempt.  The discovery process in litigation is supposed to do precisely what Novikoff said it should do -- uncover the true facts.  Novikoff's words were not defamatory.

Novikoff's statements are not "of or concerning" Russ.  Russ, therefore, has no basis to sue for defamation on account of Novikoff's statements.  Jackson v. Quinn, 593 N.Y.S.2d 484, 484 (4th Dep't 1992).

The statements attributed to Young are likewise not defamatory statements of fact. Plaintiffs allege that Young's statements "falsely accused Mr. Lenz and Mr. Russ of engaging in criminal conduct with Neal Trabich ("Trabich"), who entered a plea of guilty to charges of bribery in matters unrelated to Mr. Lenz and Mr. Russ."  Complaint ¶ 10. Young's statements had nothing to do with Trabich's guilty plea to criminal charges. Def. Stmnt. Facts ¶ 96.  The Daily Record article in which Young's statements appeared was about the civil litigations.  Any reader would understand that.  So, too, were Young's comments.  The article reported that SADC was awarded summary judgment, and quoted Young as saying that Trabich was the "first domino to fall", and that he will be

"vigorously" pursuing Lenz and Russ in other litigation.  "I think you're going to see a lot more litigation and I think the nefarious nature of this scheme will continue to unravel."  Any reasonable reader would understand that Young was talking about his civil litigations with Trabich and Lenz, and his intention to sue Jay Russ.  None of Young's words, especially in the context of the preceding paragraphs which recount SADC's summary judgment victory and attempts to speed up the civil litigation, could be reasonably interpreted as suggesting that Russ or Lenz were involved in the crimes for which Trabich pled guilty.  Julian v. American Business Consultants, 137 N.E.2d 1, 15 (1956) ("In analyzing the words in order to ascertain whether a question of fact exists for resolution upon trial, the court will not pick out and isolate particular phrases but will consider the publication as a whole.").  Moreover, Young's stated intention of bringing a lawsuit against Jay Russ cannot give rise to a claim for defamation.  Immuno AG., 77 N.Y.2d at 255 ("the writer's presumptions and predictions as to what 'appeared to be' or 'might well be' or 'could well happen' or 'should be' would not have been viewed by the average reader of the Journal as conveying actual facts about plaintiff")

Young did not make a statement of fact that is capable of being proven true or false.  Young's use of the words "nefarious scheme", "triumvirate" and "first domino to fall" are examples of colorful language in the heat of litigation that a reasonable reader would understand as the opinion of an interested litigant.  "Loose, figurative or hyperbolic statements, even if deprecating the plaintiff, are not actionable."  Dillon, 704 N.Y.S.2d at 5.

Plaintiffs have no viable claims for defamation as to either Novikoff's or Young's reported statements. Cases applying New York law are legion which have held that statements of opinion, statements that cannot be proven true or false, or those statements containing hyperbolic rhetoric do not support a claim for defamation. Lacher v. Engel, 817 N.Y.S.2d 37, 42 (1st Dep't 2006) ("Engel's choice of words, 'thief' and 'liar,' was made in the context . . . that the bills Lacher demanded be paid were alleged to be fraudulent. The epithets, therefore, while lacking in both style and restraint nevertheless were directly pertinent to the basis for the motion for a further extension in support of which defendant was arguing") ("Engel's statement that Lacher was a 'pathological character' . . . is more accurately characterized as an opinion, and thus not actionable"). Levin v. McPhee, 119 F.3d 189, 197 (2d Cir. 1997) (holding accounts of suspected murder "explicitly presented as 'versions'" to be protected opinion); Bloom v. Fox News, 528 F. Supp. 2d 69, 76 (E.D.N.Y. 2007) (holding statements of news anchor that "'victims of this doctor' should be paid off by their insurance company, and that 'the phones should be ringing off the hook'" was "conjecture"); Corporate Training Unlimited, Inc. v. Nat'l Broad. Co., Inc., 981 F. Supp. 112, 123 (E.D.N.Y. 1997) ("[T]he Broadcast's 'Rambo' references . . . are the type of hyperbolic speech which cannot be read to assert provable facts and is beyond the scope of defamation law."); 600 W. 115th St. Corp., 603 N.E.2d at 935 (holding claim of Condominium Board member at permit application hearing that "this entire lease and proposition . . . is as fraudulent as you can get and it smells of bribery and corruption," to be "hyperbolic"); Immuno AG, 77 N.Y.2d at 255 ("[T]he writer's presumptions and predictions as to what 'appeared to be' or

14

'might well be' or 'could well happen' or 'should be' would not have been viewed by the average reader . . . as conveying actual facts about plaintiff."); <u>Boulos, M.D. v. Newman, M.D.</u>, 754 N.Y.S.2d 510, 512 (4th Dep't 2003) ("[T]he alleged statement that 'I don't think [plaintiff] knows what he is talking about either' is vague, ambiguous, indefinite and incapable of being objectively characterized as true or false." (internal quotation marks and citation omitted)); <u>Park v. Capital Cities Commc'ns, Inc.</u>, 585 N.Y.S.2d 902, 905 (4th Dep't. 1992) (holding claim that eye surgeon was a "rotten apple" after allegations of engaging in unnecessary surgery to be "vague, ambiguous, indefinite and incapable of being objectively characterized as true or false"); <u>McGill</u>, 582 N.Y.S.2d at 98 ("[D]isputed assertions that water and veterinary care are not 'sufficient' and that . . . horses are housed under 'unsafe, unhealthy, and inhumane conditions,' constitute protected opinion under New York State Law."); <u>DRT Constr. Co., Inc.</u>, 576 N.Y.S.2d at 725 ("The phrase 'profit hungry land abusers' does not contain a provably false factual connotation, cannot reasonably be interpreted as stated actual facts and is the sort of 'loose, figurative or hyperbolic language' that is constitutionally protected opinion." (citation omitted)).

Plaintiffs' claims for defamation do not survive scrutiny under New York law. Defendants' motion for summary judgment should be granted.

## POINT II:  Novikoff's *argument* that the terms of the Bethpage deal were concealed is substantially true.

Novikoff said nothing untrue.  The financial terms of the Bethpage transaction were *not* disclosed to the State of New York, as Russ admitted.  Def. Stmnt. Facts ¶¶ 34-

35.  The consequences, inferences, or legal positions that flow from the fact that the terms were kept from the State of New York are irrelevant to the underlying truth or falsity of the statement.  See Proskin v. Hearst Corp., 787 N.Y.S.2d 506, 508 (3d Dep't 2005) (newspaper article implying that attorney had committed criminal act by improperly altering client's will was held not actionable; adverse inferences or innuendo are not sufficient to demonstrate falsity).  Indeed, the paragraph preceding Novikoff's statement contains a quote attributed to a State Parks spokesperson who acknowledged that the terms of the deal were not disclosed, and were not of interest to the State.  Thus, Novikoff said nothing false. There was no defamation.  Summary judgment as to Novikoff's statements should be granted.

**POINT III:  Plaintiffs cannot prove that Young's and Novikoff's statements were made with the requisite degree of fault for a matter of public concern.**

In matters of public concern, a plaintiff in a defamation case must prove that the defendants acted in a "grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties." Chapadeau v. Utica Observer-Dispatch, 341 N.E.2d 569, 571 (N.Y. 1975).

The circumstances surrounding the issuance of the license to manage and operate the concessions at a public park, especially one as well-known as Bethpage State Park, are clearly a matter of public concern.  So, too, were Neal Trabich's criminal problems. Newsday covered these topics precisely because they are matters of public concern.

Plaintiffs cannot sustain their burden of proving that Defendants acted in a grossly irresponsible manner.  The allegations against Trabich, Russ, and Lenz were

16

made based on deposition testimony and documents that were attached to two motions filed in the United States District Court for the District of Maryland. Def. Stmnt. Facts ¶¶ 67-68, 85; Exhs. 32-33, 40. Thus, when Novikoff "argued" that the terms were concealed, the evidentiary record substantiated that argument. When Young used the word "triumvirate" to describe Trabich, Russ, and Lenz, Trabich's deposition testimony alone (as shown in SADC's Motion to Compel) supported the notion that the three of them worked together to orchestrate the Bethpage assignment transaction and the $500,000 mortgage loan that interfered with SADC's rights under the Facility Agreement. Exh. 40 (Motion to Compel). Since Plaintiffs will not be able to sustain their burden of proving gross irresponsibility, Defendants are entitled to summary judgment as a matter of law. See Chapadeau, supra.

**POINT IV: Young's and Novikoff's Statements Are Protected Under NY Statutory Privilege.**

New York law recognizes that the public interest is served by shielding certain communications from claims of defamation. Liberman v. Gelstein, 605 N.E.2d 344, 349 (N.Y. 1992) (citation omitted). An affirmative defense to a claim of defamation is that the statement was privileged. See Dillon, 704 N.Y.S.2d at 5; Zaidi v. United Bank Ltd., 747 N.Y.S.2d 268, 272-73 (Sup. Ct. New York County 2002) (laying out basic and common-law elements of defamation); Restatement (Second) of Torts § 558.

The statements of Young and Novikoff published in The Daily Record and Newsday, respectively, are protected by New York Civil Rights Law § 74, which provides a privilege for alleged defamatory publications in the present case's

17

circumstances.  Section 74 reads in relevant part that a "civil action cannot be maintained against any person … for the publication of a fair and true report of any judicial proceeding."  N.Y. Civ. Rights § 74 (2009).  This statute codifies the common law rule of fair reporting, which permits the fair and accurate reporting of public proceedings of government bodies in good faith without malice or intent to harm, and provides that publication of a fair and true report of any judicial, legislative or other official proceeding is absolutely privileged.  See Hogan v Herald Co., 446 N.Y.S.2d 836, 841 (4th Dep't 1982); Holy Spirit Ass'n for Unification of World Christianity v. New York Times Co., 399 N.E.2d 1185, 1187 (N.Y. 1979) (a fair and substantially accurate report of an official, judicial or legislative proceeding cannot be the basis of a defamation action).

New York courts have applied the absolute privilege to a wide range of statements made outside of court.[3]  The proper inquiry is whether the allegedly defamatory statements "may possibly be pertinent" to the litigation.  Lacher, 817 N.Y.S.2d at 41 (citing People ex rel. Bensky v. Warden, 179 N.E. 257, 259 (N.Y. 1932)).  The privilege

---

[3]  Beyond just statements to newspapers, as in the present case, the range of circumstances to which New York courts have ruled the privilege applies includes: in a letter from an attorney to subpoenaed witnesses, Youmans v. Smith, 47 N.E. 265 (N.Y. 1897); in letters between attorneys and parties or communications by attorneys to the court, Simon v. Potts, 225 N.Y.S.2d 690 (Sup. Ct. Albany County 1962); during offers of settlement by attorneys, Zirn v. Cullom, 63 N.Y.S.2d 439 (Sup. Ct. New York County 1946); during an attorney's examination of records pursuant to an order of discovery, Kraushaar v. LaVin, 39 N.Y.S.2d 880 (Sup. Ct. Queens County 1943); by an attorney in a magazine article quoting from and restating the allegations of the complaint, The Savage Is Loose Co. v. United Artists Theatre Circuit, Inc., 413 F. Supp. 555 (S.D.N.Y. 1976); in a letter from an attorney to the Grievance Committee of the Association of the Bar of the City of New York, Wiener v. Weintraub, 239 N.E.2d 540 (N.Y. 1968); and in an information subpoena mailed to a plaintiff's employer, Mancini v. Marine Midland Bank, 586 N.Y.S.2d 61 (4th Dep't 1992), appeal denied, 80 N.Y.2d 760, 605 N.E.2d 874, 591 N.Y.S.2d 138 (1992).

"embraces anything that may possibly be pertinent or which has enough appearance of connection with the case." Seltzer v. Fields, 244 N.Y.S.2d 792, 797 (1963), aff'd, 14 N.Y.2d 624 (1964).

Courts have even applied the privilege to comments made in similar contexts as those at issue in this case, namely, comments made outside of court that restate or summarize a party's allegations. See Lacher, 817 N.Y.S.2d at 43.("The section 74 privilege . . . applies to comments made about proceedings. Comments that essentially summarize or restate the allegations of a pleading filed in an action are the type of statements that fall within section 74's privilege") (citing Ford v. Levinson, 454 N.Y.S.2d 846 (1st Dep't 1982)). The Lacher court elaborated:

> It is well established that a statement made in the course of legal proceedings is absolutely privileged if it is at all pertinent to the litigation. Youmans v. Smith, 153 N.Y. 214, 219, 47 N.E. 265, 266 (1897). In this seminal case, the Court made clear that the rule rests on the policy that counsel should be able to "speak with that free and open mind which the administration of justice demands" without the constant fear of libel suits. Id., at 233, 47 N.E. at 268.

Lacher, 817 N.Y.S.2d at 40; see also Cotrell v. Berkshire Hathaway, Inc., 809 N.Y.S.2d 714, 715 (4th Dep't 2006) (although complained-of statement did not quote official source materials, it nonetheless was privileged under Section 74 as it represented accurate report of charges against plaintiff).

In order to qualify for the absolute privilege, a defendant need not show that its statement was a substantially verbatim or precisely accurate accounting of court opinion; all that is required is a showing that the statement sets forth a "substantially accurate"

19

account of what took place.  Leder v. Feldman, 569 N.Y.S.2d 702, 703 (1st Dep't 1991); Edmiston v. Time, Inc., 257 F. Supp. 22, 25 (S.D.N.Y. 1966).

A statement is "substantially accurate" "if, despite minor inaccuracies, it does not produce a different effect on a reader than would a report containing the precise truth." Silver v. Kuehbeck, No. 05 Civ. 35 (RPP), 2005 WL 2990642 at *16 (S.D.N.Y. Nov. 7, 2005) (where in view of the entire article in which the attorney's statement appeared, the court found that the attorney's statement was a substantially accurate account of his clients' position in the litigation, despite the attorney's report erroneously stating that his clients had "filed formal complaints" against the plaintiff, accusing the plaintiff of making "death threats" against the attorney's clients, and saying that plaintiff had a "record of bizarre and violent behavior against others") (citing Zerman v. Sullivan & Cromwell, 677 F. Supp. 1316, 1322 (S.D.N.Y. 1988)). See also Foley v. CBS Broadcasting Inc., No. 169463/05 (Sup. Ct. N.Y. Co. Sept. 13, 2006) (holding broadcasts concerning Department of Consumer Affairs proceedings protected by § 74 privilege where they contained only "minor inaccuracies" about the proceedings).

### A.  Young's *Daily Record* Quote Qualifies for § 74 Statutory Protection

Young's quote in The Daily Record ("we are vigorously pursuing Gordon Lenz and we will soon commence vigorously pursuing Jay Russ.  I think you're going to see a lot more litigation and the nefarious nature of this scheme will continue to unravel") was about and concerning the civil litigation; it described what course of action Young was taking and offered a prediction of future litigation.  "[A]ccounts of legislative or other official proceedings must be accorded some degree of liberality."  Holy Spirit Ass'n for

20

Unification of World Christianity, 399 N.E.2d at 1187. "For a report to be characterized as 'fair and true', 'it is enough that the substance of the article be substantially accurate' and the language 'should not be dissected and analyzed with a lexicographer's precision.'" Branca v. Mayesh, 476 N.Y.S.2d 187, 189 (2d Dep't 1984) (holding that since defendant's comments did not deprive the report of its substantial accuracy and could not reasonably be considered a separate defamatory accusation, they warranted the protection of § 74; the court rejected plaintiff's contention that the report could not be regarded as "fair and true" in view of the comments plaintiff added to it.) (citing Holy Spirit Assn. for Unification of World Christianity, 399 N.E.2d at 1187-88; see Gurda v. Orange County Pub. Div. of Ottaway Newspapers, 436 N.E.2d 1326 (N.Y. 1982).

At the time the Daily Record article was published, Young had just recently filed a detailed First Amended Complaint against Lenz in which the allegations of a scheme among Trabich, Russ and Lenz was detailed. Def. Stmnt. Facts ¶78; Exh. 36. In addition, the filings in the Maryland action in the days and weeks preceding The Daily Record article detailed those same allegations, with supporting evidence. Id. ¶¶ 67-69, 85; Exhs. 32-33, 40. Young was, in fact, vigorously pursuing a claim against Lenz, and he was merely commenting on the civil litigation matters. Such comments are privileged under New York law.

Young's word choices of "nefarious" or "triumvirate" do not eliminate the § 74 privilege. Young's statement accurately reflects allegations made in the various litigation filings where he asserted that a "scheme" among Lenz, Trabich, and Russ could be proved. Id. See Martin v. Beigel, 15 Media L. Rep. 2261, 2663 (Sup. Ct. Columbia Cty.

21

1988) (holding that the allegedly libelous statements fell within the privilege conferred by § 74 where "it appears that all of the statements published by the defendants are of and concerning the complaint in the underlying federal litigation, and constitute substantially accurate descriptions or characterizations of such complaint"). Since Young's statements related directly to his litigation position, his statement is privileged under New York Civ. Rights Law § 74.

## B.  Novikoff's *Newsday* Quote Qualifies for § 74 Statutory Protection

Novikoff's statements to Newsday on behalf of his client (that the deal at issue was "concealed" and "[w]e are confident that when we get discovery . . . we'll get the true picture of what the relationship was between Mr. Lenz and Mr. Trabich")  also fall under the statutory protection.  "New York courts have extended the [Civ. Rights Law § 74] privilege to comments made by attorneys to the press in connection with the representation of their clients."  Willson v. Ass'n of Graduates of the United States Military Acad., 946 F. Supp. 294, 297 (S.D.N.Y. 1996); McNally v. Yarnall, 764 F. Supp. 853, 856 (S.D.N.Y. 1991) (where during interview for magazine article concerning artwork owner's defamation suit against attorney's client, attorney allegedly indicated that owner's artworks were not authentic and owners sought to include attorney as defendant in defamation suit; the court ruled that because attorney's alleged statement to the press merely restated his client's position in defending action, it was privileged under § 74); Branca v. Mayesh, 476 N.Y.S.2d 187 (2d Dep't 1984); Ford v. Levinson, 454 N.Y.S.2d 846 (1st Dep't 1982).

22

In <u>McNally</u>, the court held that (1) N.Y. Civ. Rights Law § 74 provided an absolute privilege to a lawyer for the publication of a fair and true report of any judicial proceeding; such privilege extended to comments made by the lawyer to the press in connection with the representation of his clients; and (2) the lawyer's comments related directly to the underlying allegations at issue in the litigation: whether the dealers were defamed by untrue statements that some of the artist's works dealt by the dealers were inauthentic. 764 F. Supp. at 855.

In the <u>Lacher</u> case, a defamation action between a plaintiff attorney and a defendant attorney, the New York Law Journal (NYLJ) article presented comments from both sides and appeared the day after the malpractice suit was commenced. The court found that, because the statements made by defendant to the NYLJ were a "fair and true" report of the malpractice action, they fell within the privilege. <u>Lacher</u>, 817 N.Y.S.2d at 43 ("In order to be 'fair and true' the account given must be only 'substantially accurate.' (citing <u>Holy Spirit Assn. for Unification of World Christianity</u>, 399 N.E.2d at 1187.

Like those of the attorneys in <u>McNally</u> and <u>Lacher</u>, Novikoff's statements related directly to the underlying allegations at issue in the litigation: allegations of a scheme among Trabich, Lenz, and Russ. Novikoff's statements are entitled to protection under the § 74 privilege.

### **CONCLUSION**

For the foregoing reasons, the motion for summary judgment should be granted, and this case should be dismissed with prejudice.

23

Dated:          Bethesda, Maryland
                February 2, 2010


                                        Respectfully submitted,



                                        _____/s/_____
                                        Steven B. Gould, Esq.
                                        Admitted *Pro Hac Vice*
                                        BROWN & GOULD, LLP
                                        7700 Old Georgetown Road, Suite 500
                                        Bethesda, Maryland  20814
                                        (301) 718-4548
                                        Counsel for Defendants
                                        (301) 718-4548


                                        _____/s/_____
                                        Laura L. Shockley (LLS- 6040)
                                        RIVKIN RADLER, LLP
                                        926 RexCorp Plaza
                                        Uniondale, New York  11556-0926
                                        Counsel for Defendants
                                        (516) 357-3000



TO:     Paul A. Batista. Esq.
        Paul Batista, PC
        26 Broadway
        Suite 1900
        New York, NY 10004


24