UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X

GORDON A. LENZ and JAY EDMOND RUSS,

                                    Plaintiffs,

                                                                    **Case No.:  CV 08 3795 (TCP)**
                    -against-


AARON YOUNG and SAINT ANNES DEVELOPMENT
COMPANY,LLC,

                                    Defendants.
---------------------------------------------------------------------X

### REPLY TO PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
### MOTION FOR SUMMARY JUDGMENT

After delaying the summary judgment process and their deadline to respond for over a year, Plaintiffs fail to place a single material fact in genuine dispute, and leave un-challenged the legal principles upon which the motion is based.  As shown below, Plaintiffs have failed to establish a basis on which this case may proceed to trial.

### I.        THERE ARE NO MATERIAL FACTS IN DISPUTE

A party seeking to dispute a material fact relied upon by the moving party must come forward with evidence that would be admissible at trial as to each disputed point.  This stringent requirement is embodied in Local Civil Rule 56.1, and well-settled summary judgment jurisprudence.  Amnesty America v. Town of West Hartford, 288 F.3d 467, 470 (2nd Cir. 2002) (party opposing summary judgment must identify "specific facts showing that there is a genuine issue for trial"), citing  Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  Indeed, under Local Civil Rule 56.1, any statement set forth in the moving party's

Rule 56.1 statement which is not expressly disputed with citations to evidence that would be admissible at trial will be deemed admitted for summary judgment purposes.

Defendants supported their summary judgment motion with a detailed, 96-paragraph Rule 56.1 statement that is meticulously supported by proper evidentiary materials. Plaintiffs admit the vast majority (¶¶ 1-31, 33, 36-40, 42-46, 48-57, 59, 60, 62, 65-67, 70-71, 73-77, 79-85, 88-90, 93-95),[1] refused to either admit or deny many (¶¶ 34-35, 41, 58, 61, 63-64, 68, 72, 78, 86, 91, 96), denied two of Defendants' statements without citation to any supporting evidence (¶¶ 32, 96), and denied one statement with supporting evidence, but only as to an immaterial part thereof (¶ 47).[2]  Accordingly, all material facts supporting this motion have been admitted for purposes of this motion. Local Civil Rule 56.1.

## II.    THE DAILY RECORD ARTICLE

Plaintiffs repeatedly assert that the statements attributed to Young in The Daily Record article were designed to, and in fact did, accuse Russ and Lenz of being involved in Trabich's criminal wrongdoing.[3]  All such characterizations of Young's statements are patently false and

---

[1]    All references in the format "¶__" shall refer to Defendants' Rule 56.1 Statement as well as Plaintiffs' corresponding counterstatement under Rule 56.1.  All Exhibits, unless stated otherwise, shall refer to the Exhibits annexed to the Declaration of Steven B. Gould.

[2]    In ¶ 47, Defendants asserted that Russ told Lenz about one of the mortgages encumbering the Trabiches' property in connection with Lenz's $500,000 loan to the Trabiches, but *allegedly* did not tell Lenz about SADC's unrecorded mortgage.  As Defendants correctly point out, the deposition testimony of Lenz cited by Defendants only supports that Russ told Lenz about one of the mortgages on the Trabich property.  Defendants are happy to live with the denial of the latter part, as such denial only bolsters SADC's claim of tortious interference in its lawsuit against Lenz.

[3]    See, e.g. Plf. Opp. at p. 1-2 ("Young not only asserted, as a statement of fact, that Messrs. Lenz and Russ were part of a criminal 'triumvirate' with Trabich, but he also asserted in the article (now posted permanently on the Internet) that they were involved in a 'nefarious scheme' and would be the 'next domino[es] to fall' as a result of Trabich's conviction."), p. 12 (claiming Young stated that "Messrs. Lenz and Russ are the '*next domino[es] to fall*' in the wake of Trabich's conviction for bribery") (italics in original), p. 14 (claiming that Young asserted that

2

misleading.  Young ***never*** used the word "criminal" in the quotes attributed to him, or otherwise implied that Russ and Lenz were involved in Trabich's crimes.  Young ***never*** said that Lenz and Russ were part of a criminal triumvirate or were the next dominos to fall as a result of Trabich's bribery conviction.  These attempts to re-write the article and distort Young's words underscore the hollowness of Plaintiffs' claims.

By both commission and omission, Plaintiffs even misquoted The Daily Record Article itself.  Plaintiffs' erroneous quote from The Daily Record article on page 4 of their brief confuses Russ for Lenz (incorrectly stating "We are vigorously pursuing **Jay Russ**"), and omits an important phrase within the quotation marks ("and we will soon commence vigorously pursuing Jay Russ").  Another misrepresentation of Young's quote is found on page 12 of Plaintiffs' opposition, where Plaintiffs claim that Young stated that "Mr. Lenz is a '*business partner*' of a convicted felon."  Plf. Opp. at p. 12 (italics in original).  Nowhere in The Daily Record article is Mr. Young ***quoted*** that Lenz and Trabich were "business partners."  The "business partner" characterization was made by the author of The Daily Record article, not Young.  Plaintiffs' descriptions and characterizations of The Daily Record article simply cannot be trusted.

At bottom, Plaintiffs' effort to overcome Defendants' summary judgment motion rests on the hope that the Court will not actually read The Daily Record article or the legal papers filed in the various lawsuits about which the article was written.   Defendants respectfully suggest that upon any reasonable reading of the article, even without reference to the source documents, the following observations are inescapable:

---

Lenz and Russ "would be the 'next domino[es] to fall' as a consequence of Trabich's conviction"), p. 14 (claiming that Young asserted that Lenz and Russ "participated in a 'nefarious scheme' with a convicted felon").

- The title and subtitle of the article tell the reader that the article is about a golf course investor seeking to speed up the case against a golf course developer because the developer just pleaded guilty to bribing a New York public official.

- The first two paragraphs of the article identify Trabich as the golf course developer who pleaded guilty and Young as the golf course investor who "took notice" of the guilty plea, and explain that Young took notice of the guilty plea because he is the plaintiff in three civil actions involving Trabich.

- The third, fourth, and fifth paragraphs report Young's favorable summary judgment ruling before Judge Quarles' for $3 million in SADC's Maryland Action, but since that summary judgment is not a final judgment, Young wanted to speed up discovery as to the remaining fraud claims before Trabich begins an expected two to six year prison sentence.

- The first sentence of the seventh paragraph quotes Young saying that Trabich "is just the first domino to fall." Having just been told that Young was awarded a $3 million summary judgment against Trabich, the reader knows that Young is referring to that favorable ruling, especially when the reader finishes the next few sentences. Indeed, in the very next sentence, the reporter writes: "He [Young] said actions against the other members of what he calls 'the triumvirate' – Trabich's lawyer Jay Russ and business partner Gordon Lenz, both in New York – will come in the next few months." When reading the quotes attributed to Young in the full context of the reporter's own words, the reader knows that Young is merely predicting that his favorable summary judgment ruling against Trabich is the first of what he hopes to be additional favorable rulings against Lenz and Russ in the civil litigations. But if that conclusion is not plainly evident from those first two sentences, the next paragraph in the article puts any doubt to rest, because it unambiguously explains that Young was talking about his pursuit of civil actions against Lenz and Russ:

  > "We are vigorously pursuing Gordon Lenz and we will soon commence vigorously pursuing Jay Russ," said Young, who has alleged the men conspired to put Trabich's assets out of reach. "I think you're going to see a lot more litigation and I think the nefarious nature of this scheme will continue to unravel."

Upon finishing the first eight paragraphs, much less the entire article, the reader understands that Young sued Trabich in a Baltimore federal court, that partial summary judgment was granted in Young's favor, that Young was pressing to speed up the case for the remaining fraud claims out of concern that Trabich would soon be incarcerated for the crimes to

which he plead guilty, that Young was alleging in the lawsuits that Trabich conspired with his attorney Jay Russ and a business colleague Gordon Lenz to put assets out of Young's reach, that Young was already suing Lenz on account of the alleged conspiracy, that Young intended to sue Jay Russ, and that Young was predicting victory in the litigations against Russ and Lenz. The reader would understand that Young was commenting on civil litigation matters, and was merely using colorful language such as "nefarious", "dominos to fall", and "triumvirate" in doing so.[4] Such use of language provides no basis for a defamation claim. See Dillon v. City of New York, 704 N.Y.S.2d 1, 5 (1st Dep't 1999) ("Loose, figurative or hyperbolic statements, even if deprecating the plaintiff, are not actionable").

As it happens, the reporter for The Daily Record was substantially accurate in his reporting about the civil litigations. For this Court's convenience, the relevant filings were submitted in support of this motion, and Defendants invite the Court's attention to those filings to understand the full context in which The Daily Reporter ran the August 21, 2008 article. Those filings include: (1) Exhibits 32-33 (Plaintiffs' Motion to Direct Entry of Final Judgment on Summary Judgment Ruling), filed *before* Trabich was convicted, which details with evidentiary support the allegations that the *triumvirate* of Trabich, Russ and Lenz engaged in a *nefarious* scheme to put assets out of SADC's reach; (2) Exhibit 36 (First Amended Complaint filed by SADC against Lenz in this Court on August 13, 2008), where, relying on the same factual predicate laid out in the Rule 54(b) motion, SADC made the same allegations of a *nefarious* scheme among the triumvirate of Trabich, Russ, and Lenz designed to help Trabich extricate himself from his obligations to SADC; and (3) Exhibits 37-38, 40-44, which include

---

[4]     Webster's New World College Dictionary (4th Ed.) defines "triumvirate" as, inter alia, "any group or set of three".

SADC's motion to compel (Exhibit 40) as well correspondence to the Court designed to speed up the civil case in light of Trabich's conviction, all of which is discussed in The Daily Record article of August 21, 2008.

Upon reviewing each of the foregoing documents, Defendants respectfully submit that the Court will readily see that, contrary to Plaintiffs' assertions, Young was not tying Russ or Lenz to Trabich's crimes in either the civil actions or in The Daily Record article. The article itself reported with substantial accuracy what was going on in the civil actions, including the allegations that three men – Russ, Trabich, and Lenz – whom Young colorfully described as a "triumvirate", engaged in the "nefarious scheme" to put Trabich's assets out of reach. It is evident that Young's use of the terms "nefarious scheme", "triumvirate" and "first domino to fall" all refer to the civil claims and are nothing but colorful or hyperbolic rhetoric and opinions of an interested litigant. Summary judgment should be granted in Defendants' favor as to statements made in The Daily Record article.[5]

### III.    THE NEWSDAY ARTICLE

Other than repeating ad nauseum that Mr. Novikoff was "disqualified" from representing Defendants in this case (which is irrelevant to any issue before the Court), Plaintiffs have little to say in opposition to Defendants' summary judgment motion as to the statements attributed to Mr. Novikoff in the Newsday article. The article characterized Novikoff as having "argued" that the terms of the Bethpage assignment were "concealed" and as stating that "the true picture of what the relationship was between Mr. Lenz and Mr. Trabich" would be revealed in discovery. The facts underlying Novikoff's argument – that Trabich, Russ and Lenz did not disclose to the State

---

[5]    Russ and Lenz, who voluntarily entered into a business relationship with a person who turned out to be a criminal, and whose crimes garnered significant TV and newspaper coverage, are solely to blame for the embarrassment associated with that decision.

of New York the consideration paid by Lenz for the Bethpage assignment – are not disputed. See ¶¶s 35, 37, 39, 41.   Given that the reporter characterized Novikoff as having "argued" that terms were concealed, any reasonable reader would readily understand Novikoff's actual words as those of an attorney asserting his client's position in a litigation matter, especially when juxtaposed against the quote attributed to the New York State representative, which immediately preceded Novikoff's quote, who said that the State "wouldn't concern itself" with the "arrangements between Lenz and Trabich".   Thus, the reader is presented with the *facts* ("the arrangements weren't disclosed to the state") as well as two opposing *opinions* regarding those facts:   Novikoff's "argument" of concealment and the State's profession that it was not concerned about such arrangements.   There is no basis for a defamation claim arising from Novikoff's "argument", and even if there were such a basis, Novikoff's statement is privileged in any event as demonstrated in our opening brief.

## IV.   THE STATUTORY PRIVILEGE DEFENSE

Relying solely on the Affidavit of convicted briber and felon Neal Trabich, Plaintiffs attempt to overcome the statutory privilege defense by arguing that Defendants initiated the various lawsuits essentially as a pretext to fulfill some malicious intention to destroy Jay Russ and Gordon Lenz.   Neal Trabich's affidavit, even if accepted as true for purposes of this motion, is insufficient to create a triable issue on the statutory privilege defense.

It is undisputed that:  (1) AP Links filed its lawsuit on March 18, 2008, almost five (5) months before the Newsday and Daily Record Articles (see ¶ 54); (2)  SADC filed its action against Lenz on April 29, 2011, some four months prior to the two articles at issue (see ¶ 59); (3) The Daily Record was already covering the story of SADC's and Young's lawsuit against Trabich as early as May 23, 2008 as well as the AP Links lawsuit (see ¶ 64, Exh. 30); (4) the

Trabich criminal story was extensively covered by various segments of the press prior to the articles in which Novikoff and Young were quoted (see ¶¶ 50, 62-64, 70-76, 84, and Exhs. 30, 34, 35);  (5) neither Young nor Novikoff sought out the reporters from The Daily Record and Newsday, but rather the reporters sought them out (see ¶¶ 66, 95; and Plf. Opp. Mem. at p. 6); (6) the factual predicate for the underlying allegations in the lawsuits that Trabich, Russ, and Lenz schemed to put assets out of SADC's reach was laid out and supported by documents and testimony in filings made in SADC's Maryland Action before The Daily Record article (see ¶¶ 67-69, 85, and Exhs. 32-33, 40).

Trabich's affidavit does nothing to overcome these undisputed facts which show that the press coverage and interest in the story was not generated by Young as a pretext to spread falsehoods for public consumption.  Moreover, the Court should take judicial notice that in the SADC v. Lenz action in this Court, this Court **denied** a motion to dismiss the lawsuit (see ECF Doc. No. 22 in Case No. 08-cv-1730), and notably, in a tacit admission that SADC's claim has evidentiary support, Lenz did not move for summary judgment.[6]   Accordingly, the underlying allegations of wrongdoing against Lenz and Russ are anything but frivolous and pre-textual, as Plaintiffs baldly assert with absolutely no evidentiary support.  For that reason, the cases upon which Plaintiffs rely in their effort to overcome the defense are inapposite.

In Williams v. Williams, 23 N.Y.2d 592, 298 N.Y.S.2d 473 (1969), the defendant was accused of instituting an action for the sole purpose of republishing the libelous statements set forth in the complaint by distributing copies of the complaint to people involved in plaintiff's industry.  The court ruled that the defendant could not avail himself of the protection of § 74

---

[6]     The Court also denied Russ's motion to dismiss in the action filed against him.  ECF Doc. No. 20 in Case No. 09-cv-5437.

since it was inconceivable that the Legislature intended to sanction such "an ingenious means of defamation" or to "protect [a] perversion of judicial proceedings." Williams, 23 N.Y.2d at 598-99.   Moreover, the defendant took active and premeditated steps to offer the allegedly defamatory statements to members of the trade.   By contrast, it is undisputed that Young and Novikoff did *not* seek out the Daily Record or Newsday or any other newspaper or media outlet. See Bridge C.A.T. Scan Assoc. v. Ohio-Nuclear, 608 F. Supp. 1187, 1196 n.26 (S.D.N.Y.1985) ("The Williams exception may *only* be invoked where the defendant has *purposefully initiated widespread publication* of the statements") (emphasis added).

Similarly, in Willson v. Ass'n of Graduates of the U.S. Military Acad., 946 F. Supp. 294 (S.D.N.Y. 1996), the defendants' counterclaimed against the plaintiff for slander based on various statements allegedly made in a press conference in the plaintiff's attorney's office to newspaper reporters, and the plaintiff contended, *inter alia*, that the statements were privileged under § 74.   The court ruled that the counter-plaintiffs produced evidence that the underlying suit was purposefully brought by plaintiffs with malice, and therefore that evidence, while thin, was sufficient to defeat summary judgment.   Id. at 297.   Here, Plaintiffs have put forward no evidence that the underlying lawsuits were filed as a mechanism to publish defamatory statements about Russ or Lenz.[7]

## V.    PLAINTIFFS' VIOLATION OF RULE 56(g)

Defendants served their summary judgment papers on February 2, 2010, and Plaintiffs' response was due on March 2, 2010.   ECF Doc. No. 81, ¶ 4; ECF Un-numbered Entry Jan. 29, 2010.   Oral argument was initially scheduled for March 26, 2010.   ECF Doc. No. 81, ¶ 4.   Rather

---

[7]    Contrary to Plaintiffs' assertions, non-media defendants may invoke the statutory privilege defense.   Konikoff v. Prudential Ins. Co. of America, 234 F.3d 92, 101 (2d Cir. 2000) (see id. at 102 n.8 for extensive citations).

than respond to the motion, Plaintiffs secured an adjournment of the summary judgment process, citing their alleged need to depose Novikoff.   ECF Doc. Nos. 90; March 23, 2010 Order. Defendants objected to Plaintiffs' adjournment request because this motion is predicated on an assumption for summary judgment purposes that the statements attributed to Mr. Novikoff in the Newsday article were both authorized and accurately reported.   ECF Doc. 91-1; see also Def. Mem. at 9.  Defendants argued that Plaintiffs failed to meet the stringent requirements of Fed. R. Civ. P. 56(f), particularly in light of the specific legal arguments advanced by Defendants which do not depend on anything Novikoff could or would say.  ECF Docs. 91, 91-1.  Over a year later, with Novikoff deposed, it is clear that Plaintiffs invoked Rule 56(f) in bad faith.  Plaintiffs made no mention of Novikoff's deposition in their Rule 56.1 counterstatement.  In their brief, Plaintiffs cited the deposition, but only to show that:  (1) Novikoff was authorized by Defendants, which Defendants had conceded for summary judgment purposes; and (2) that Novikoff had received Bethpage documentation through a FOIA request.  Plf. Mem. at 6-7.  That latter point was not disputed either, particularly in light of the fact that Defendants included the same FOIA documentation in its summary judgment papers.  See Exh. 32, at Exhibit 7 thereof.  Plaintiff delayed the summary judgment process by insisting, in bad faith, on taking Novikoff's deposition.

## VI.    CONCLUSION

After having a year to formulate an opposition, Plaintiffs have failed to demonstrate the existence of a genuine dispute of material fact or to refute the legal principles identified by Defendants which warrant entry of summary judgment.  As a matter of law, there was no defamation here.  Defendants respectfully request that the Court grant summary judgment, and dismiss this case with prejudice.

Dated:          Bethesda, Maryland
                March 17, 2010

                                            Respectfully submitted,


                                            _____/s/_____
                                            Steven B. Gould, Esq.
                                            Admitted *Pro Hac Vice*
                                            BROWN & GOULD, LLP
                                            7700 Old Georgetown Road, Suite 500
                                            Bethesda, Maryland  20814
                                            (301) 718-4548
                                            Counsel for Defendants
                                            (301) 718-4548


                                            _____/s/_____
                                            Laura L. Shockley (LLS- 6040)
                                            RIVKIN RADLER, LLP
                                            926 RexCorp Plaza
                                            Uniondale, New York  11556-0926
                                            Counsel for Defendants
                                            (516) 357-3000


TO:     Paul A. Batista. Esq.
        Paul Batista, PC
        26 Broadway
        Suite 1900
        New York, NY 10004